UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## AMENDED CIVIL MINUTES - GENERAL

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|

| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. |
|---|---|

| Present: The Honorable | A. Howard Matz, U.S. District Judge | |
|---|---|---|
| Stephen Montes | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys NOT Present for Plaintiffs: | Attorneys NOT Present for Defendants: |
|---|---|

**Proceedings:**     (IN CHAMBERS)

This order addresses both the motion to dismiss and (in the concluding portion) injunctive relief.

## MOTION TO DISMISS

This case is before the Court on the motion to dismiss the first amended complaint ("FAC") filed by defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), American Home Mortgage Servicing, Inc. ("AHMS"), Power Default Services, Inc. ("PDS"), and Residential Credit Solutions, Inc. ("RCS") (collectively "Defendants"). The Court held a hearing on June 6, 2011. For the reasons set forth below, the Court DENIES the motion; Plaintiffs Angela and Robert Sacchi have adequately stated claims for which relief may be granted as to the foreclosure on their property, and for violations of California Civil Code section 2923.5 and California's unfair competition law.[1]

## I.    PROCEDURAL BACKGROUND

This case was removed from Los Angeles County Superior Court on February 24, 2011. On March 2, 2011, Defendants filed a motion to dismiss the complaint. While that motion was pending, Plaintiffs filed a first amended complaint ("FAC"), alleging causes of action for cancellation of deed, slander of title, injunctive relief, violation of California Civil Code § 2923.5, and violation of California's unfair competition law ("UCL"). The FAC named eight defendants: MERS, as nominee for AHMS; AHMS;

---

[1] Docket No. 32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

American Home Mortgage Corporation (doing business as American Brokers Conduit); Residential Credit Solutions, Inc. ("RCS"); Fidelity National Title Company (doing business as Default Resolution Network); Default Resolution Network, Power Default Services, Inc.; and LandAmerica Commonwealth. The FAC is now the operative complaint.

On March 25, 2011, Plaintiffs filed an application for a temporary restraining order and preliminary injunction to enjoin the foreclosure sale of their home, which was scheduled for March 28, 2011. The Court granted the application for a TRO and set a hearing date on the preliminary injunction for May 2, 2011. Prior to the hearing, the parties briefed the issues relevant to the preliminary injunction and Defendants filed the instant motion to dismiss the FAC. At the May 2, 2011 hearing, the Court denied the preliminary injunction without prejudice and extended the TRO, which remains in place.

This Court has dealt with numerous mortgage-related cases, and in the process of wading through them it has learned that seemingly straightforward transactions – non-judicial foreclosures – are not at all routine. Indeed, all too often they are mystifying, because of the utterly confusing assignments, substitutions, and other transactions (some recorded, some not) conducted by a host of entities. The number and names of the defendants in Plaintiffs' FAC only hint at what has now been revealed as the tangled story underlying this loan and the other loans involved in many of these cases. Accordingly, in an effort to understand the allegations in Plaintiffs' case, at the May 2, 2011 hearing, the Court ordered the parties to file three items: (1) a diagram showing the nature and sequence of relevant loan transactions; (2) a related chronology; and (3) supplemental briefs on relevant legal authority. The parties have since filed these materials. Exhibit A to this order is Plaintiffs' diagram and chronology and Exhibit B is Defendants' diagram and chronology.

The parties' submissions graphically demonstrate how extraordinarily complicated and convoluted is the history and background of this loan. Absent discovery, Plaintiffs could not have known, much less understood, many of the details provided by Defendants in their submission. What these details reveal therefore could not have been, and was not, the basis of the allegations in the FAC. Further, not all of these details are supported by evidence that is judicially noticeable or otherwise properly before the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

on a motion to dismiss. Nevertheless, the Court is compelled to touch briefly on Defendants' version of the early history of this loan, because it provides insight into this country's financial crisis, a crisis that continues to wreak havoc on homeowners and bedevil numerous court systems.

## II.   FACTS

The following "facts" are taken from the FAC or from judicially noticeable documents filed in support of Defendants' motion to dismiss.[2] Allegations in the FAC are presumed to be true for purposes of a motion to dismiss.

### A.   Background

In 2006, American Home Mortgage Corporation ("AHMC") executed a "Repurchase Agreement" with Calyon New York Branch ("Calyon")[3]. Per the terms of the Repurchase Agreement, Calyon essentially prepaid AHMC for loans that AHMC would extend to borrowers. AHMC used the funds Calyon provided to originate loans, which then were transferred to Calyon. It was contemplated that AHMC would repurchase the loans from Calyon at a later date and immediately transfer them to another private investor or securitization trust.

The Sacchi Promissory Note and Deed of Trust were executed on July 16, 2007. American Brokers Conduit, a subsidiary of AHMC, was the originating lender. Through the Repurchase Agreement, Calyon took ownership of Plaintiffs' loan immediately upon its origination. On August 6, 2007, *less than a month* after the Sacchis obtained their loan, AHMC filed for Chapter 11 bankruptcy, which precluded it from repurchasing the loan. Indeed, at the time of the bankruptcy petition, Calyon held 5,700 loans (including Plaintiffs') in the amount of approximately $1.2 billion.

One of the AHMC bankruptcy court's orders provides further detail about the nature of AHMC's business and the purpose of the "Repurchase Agreement" with

---

[2] The Court GRANTS Defendants' request for judicial notice. Docket No. 33.

[3] Calyon is now known as Crédit Agricole Corporate and Investment Bank.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | | Date | June 24, 2011 |
|----------|----------------------|--|------|----------------|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | | |

Calyon:

> At the time the [Repurchase Agreement] was executed, the Debtors' [AHMC and various affiliated companies] business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans. The purpose of the [Repurchase Agreement] was to provide the Debtors with funds for the origination of mortgages [sic] loans. The funds to originate the mortgage loans were transferred by the Purchasers [security issuers and banks] to the Debtors. Immediately upon origination, the mortgage loans were transferred to the Purchasers on an interim basis while the Debtors attempted to arrange for their final disposition, either by sale to a private investor on a whole loan basis or to a securitization trust. Upon final disposition of the mortgage loans, the loans were repurchased by the Debtors in exchange for a payment to the Purchasers - consisting of the original purchase price paid to the Debtors plus the "Price Differential." The Price Differential is the applicable *per diem* "Pricing Rate" multiplied by the number of days the mortgage loans were in the hands of the Purchaser. Upon repurchase by the Debtors, the mortgage loans were immediately transferred by the Debtors to the ultimate purchasers, i.e., either the private investor or securitization trust.

*In re American Home Mortgage, Inc.*, Case No. 07-11047 (Bankr. D. Del. Jan. 4, 2008) (brackets added).

In short, AHMC was involved with Calyon and other entities in a financial round-robin. After AHMC filed for bankruptcy, the 5,700 loans remained an asset of Calyon, but the bankruptcy court deemed the servicing rights of the loans to be an asset of AHMC. American Home Mortgage Acquisition Co., Inc. ("AHMAC") purchased the servicing rights from the AHMC bankruptcy estate and, as part of the purchase agreement, changed its name to American Home Mortgage Servicing, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

For this transaction alone, therefore, at least three different entities with the words "American Home Mortgage" in their name are involved: (1) American Home Mortgage Corporation; (2) American Home Mortgage Acquisition Co., Inc.; and (3) American Home Mortgage Servicing, Inc.  Moreover, the first (now bankrupt) entity, American Home Mortgage Corporation, had a subsidiary involved: American Brokers Conduit.

Defendants maintain that, by way of various agreements between American Home Mortgage Servicing, Inc. and Calyon, Calyon transferred the servicing rights for certain loans (including Plaintiffs') to defendant RCS as of October 1, 2010.  Further, according to Defendants, one of these agreements required that RCS be designated on the MERS system as the Beneficiary under Plaintiffs' Deed of Trust.

The Court now turns to the pending motion to dismiss.

**B.     This Case**

On July 16, 2007, Plaintiffs executed in favor of defendant American Broker's Conduit an adjustable rate note ("Note") in the amount of $825,000.00.  The Note was secured by a Deed of Trust ("Deed") executed by Plaintiffs, as Trustors, in favor of defendant MERS as Beneficiary, with defendant LandAmerica as Trustee.  The Deed was recorded on July 25, 2007.

In May 2010, Plaintiffs fell behind on their mortgage payments.  On August 9, 2010, defendant Default Resolution Network, purporting to act as "Agent for the Beneficiary" (without specifying what entity was then the Beneficiary), caused a Notice of Default ("NOD") to be recorded on Plaintiffs' property.  The NOD instructed Plaintiffs to contact American Home Mortgage Servicing, Inc. to arrange for payment to stop the foreclosure.  On November 17, 2010, defendant RCS executed a Substitution of Trustee purporting to substitute defendant Fidelity National Title Company ("Fidelity") in as Trustee for the Deed.  This Substitution of Trustee was not recorded until January 6, 2011.

There is no evidence before the Court (and certainly no recorded document) demonstrating that MERS assigned the beneficial interest in the Deed to RCS *before* November 17, 2010, when RCS executed the Substitution of Trustee in favor of Fidelity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | | Date | June 24, 2011 |
|---|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | | |

To the contrary, it was not until December 22, 2010 that MERS executed an Assignment of Deed of Trust in favor of RCS. This was more than a month *after* RCS purportedly substituted Fidelity in as Trustee. The December 22, 2010 Assignment of Deed of Trust from MERS to RCS was not recorded until January 6, 2011.

Also recorded on January 6, 2011 was a Notice of Trustee's Sale executed by Fidelity, acting as the agent of defendant Power Default Services, Inc. ("PDS"), which purported to be the new Trustee.[4] According to the dated signature on the recorded Notice of Trustee's Sale, it was executed on January 3, 20*10*, well before Plaintiffs defaulted on their loan.

## III.   ANALYSIS

### A.   Legal Standard for Motion to Dismiss

A complaint may be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S.—, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).

---

[4] When, and how, PDS became the new Trustee is unknown. Defendants appear to believe that Fidelity was the Trustee at this point and PDS was acting as its agent, contrary to the face of the Notice of Trustee's Sale ("NTS") itself. *See, e.g.*, Motion to Dismiss at 13 ("Fidelity was authorized to record the [NTS] by and through its agent, and did in fact do so."). If Defendants are correct on this point, then there is yet another facial irregularity with the NTS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

The plausibility standard articulated in *Twombly* and *Iqbal*, requires that a complaint plead facts demonstrating "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks and citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 129 S.Ct. at 1950 (internal citation, alteration, and quotation marks omitted); *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the pleader to relief.") (citing *Iqbal*, 129 S.Ct. at 1949).

To determine whether a complaint states a claim sufficient to withstand dismissal, a court considers the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court must accept as true all factual allegations contained in the complaint. That principle, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1950. A complaint filed *pro se*, however, is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | | Date | June 24, 2011 |
|---|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | | |

## B.    Plaintiffs' Claims Are Plausible On Their Face

Defendants argue that all of Plaintiffs' claims are based on the following allegations in the FAC: (1) the Substitution of Trustee executed by RCS on November 17, 2010 is invalid because RCS had no beneficial interest in the Deed at the time it executed the Substitution of Trustee and because the affidavit of mailing stated the Substitution of Trustee was mailed on January 3, 2010 (i.e., well before that instrument was executed); (2) the Notice of Trustee's Sale is invalid because it was signed on January 3, 2010, well before Plaintiffs defaulted on their loan, and because there was no prior valid Substitution of Trustee (meaning that PDS, the purported Trustee, could not legally execute the Notice of Trustee's Sale); (3) MERS did not have authority to assign the Deed because it never had possession of the Note or held a beneficial interest in the Note or the Deed; (4) Defendants did not comply with California Civil Code § 2923.5; and (5) Defendants engaged in unfair competition through various fraudulent acts, material misstatements, and intentional violations of California statutes.

Defendants argue that all of these claims fail as a matter of law. They are mistaken. Defendants filed a motion to dismiss, not a motion for summary judgment. At issue here is only whether Plaintiffs properly have stated claims for relief. Defendants' motion in certain respects is based on their efforts to disprove as factually unfounded various of Plaintiffs' allegations, but they cannot properly do so at this stage of the litigation. Moreover, Defendants downplay the alleged irregularities in the tortuous flow of the transactions associated with the loan in this case. It is true, as Defendants repeatedly assert, that California Civil Code § 2924, et seq. authorizes non-judicial foreclosures in this state. It is not the case, however, that the availability of a non-judicial foreclosure process somehow exempts lenders, trustees, beneficiaries, servicers, and the numerous other (sometimes ephemeral) entities involved in dealing with Plaintiffs from following the law.

The Court need not address all of the parties' various arguments. It is sufficient to state that Plaintiffs' foreclosure-related claims (Counts One through Three) survive Defendants' motion to dismiss because, on the basis of the FAC's allegations and judicially noticed documents, RCS had no beneficial interest in the Deed of Trust when it acted to foreclose on Plaintiffs' home by substituting in Fidelity as Trustee. Accordingly, per Plaintiffs' allegations, Fidelity's purported substitution is invalid, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | | Date | June 24, 2011 |
|---|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | | |

are Fidelity's subsequent actions as Trustee (e.g., executing and recording the Notice of Trustee's Sale). In addition, Plaintiffs have sufficiently alleged causes of action for violation of California Civil Code § 2923.5[5] and California's UCL (Counts Four and Five).

> 1. <u>RCS had no beneficial interest in the deed when it executed the substitution of trustee</u>

According to the documents attached as exhibits to the FAC and those submitted with Defendants' Request for Judicial Notice, RCS executed a Substitution of Trustee in favor of Fidelity on November 17, 2010. According to these same documents, however, RCS *had no beneficial interest in the Deed* until – at the earliest – more than a month later, on December 22, 2010, when MERS executed an Assignment of Deed of Trust in favor of RCS. Thus, according to Plaintiffs' allegations, the November 17, 2010 Substitution of Trustee, by which Fidelity purportedly became Trustee, is invalid because RCS had no legal interest in the Deed and all of the events that flowed from this substitution are invalid. This includes, for example, the Notice of Trustee's Sale executed by Fidelity on January 3, 2011.

Defendants' argument to the contrary is astonishing. They claim that "because recordation [of an Assignment of Deed of Trust] is not necessary [under California's non-judicial foreclosure process], the execution date of an 'Assignment of Deed of Trust' indicates nothing more than the date when it was determined that the transfer would be made part of the property's official title records. Thus, *the recording and execution date is inconsequential and in no way connotes that the DOT's beneficial interest was transferred at that precise time*." Motion to Dismiss at 12-13. Defendants cite no authority for this outlandish claim. If the execution date for an Assignment of Deed of Trust is "inconsequential," and the document itself does not reveal *when* the assignment occurred, then how is one to determine whether (and *when*) the purported assignment was consummated? How could one ever confirm whether the entity seeking to throw a

---

[5] This statute requires a mortgagee, trustee, beneficiary, or authorized agent to contact the borrower in person or by telephone to explore options for the borrower to avoid foreclosure *before* the entity in question files a notice of default. A notice of default must include a declaration that the entity has complied with section 2923.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | | Date | June 24, 2011 |
|---|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | | |

homeowner out of his residence had the legal authority to do so? [6]

The following exchange at the June 6, 2011 hearing between the Court and moving defendants' counsel illustrates the problem:

> The Court: But putting aside whether or not something has to be recorded, [Counsel], do you quarrel with the proposition that authority has to be provable on the part of the foreclosing entities?
>
> Counsel: I think if – it's a dicey issue and it's a gray area because, if challenged, then the only way to get out of a lawsuit is to show I do have authority.
>
> And this case lacks merit, but it's opening the door to thousands and thousands of lawsuits, and we are challenging MERS' authority to assign a Deed of Trust, challenging MERS' authority to foreclose.
>
> The Court: Well, not necessarily challenging someone's authority to have done something or do something, but simply imposing the requirement that the authority be proven regardless of recording.
>
> * * *
>
> Counsel: And one of my issues, Your Honor, with the argument that MERS doesn't have the authority to foreclose or MERS doesn't have the authority to

---

[6] As mentioned earlier, it appears from Defendants' chronology and loan history diagram that RCS claims to have become the Deed's Beneficiary, effective October 1, 2010, through a Servicing Agreement and an Amended and Restated Asset Schedule. Defendants have not asked the Court to take judicial notice of these documents, nor would there be a proper basis for judicial notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

assign, it just boils down to simple contract law. I mean, it's sort of an illogical result to say that MERS doesn't have authority.

If I enter into a contract with counsel, and I say, "I'll loan you $5,000 and – and, you know, if you don't pay or if you breach that agreement, then the clerk will – the clerk will have authority to repossess the car and do whatever" –

The Court:   [Counsel], I understand the importance of enforcing rights reflected in and obtained from contracts. You seem to be wondering whether I understand that, so don't wonder.

What I don't understand is your apparent inability to understand the distinction I'm drawing between contending that someone doesn't have authority, which is not what's at issue here and right now, as opposed to contending that someone who might have authority has to demonstrate [it]. Those are two related, but very different propositions.

Counsel:   I understand, Your Honor. And my only response can be that under the non-judicial statutory framework, that is not a requirement, and it's not an obligation to judicially – to non-judicially foreclose.

\* \* \*

The Court:   So someone, under your understanding of existing California non-judicial foreclosure law, can seek and obtain foreclosure regardless of whether he has established the authority to do so?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

> Counsel:    Well, the California statutes, they say that the trustee can do such things. The interest holder, the lender can do such things, so, yes, if someone challenges it –
>
> The Court:    But then there is a question because of the way this loan, and hundreds of thousands I'm pretty sure like it, were handled – I'm trying to use very neutral terms – who has got these rights.
>
> The trustee is a concept. The beneficial holder is a concept. Whoever functions within the framework or the definition of that concept could do all these things consistent with non-judicial foreclosure.
>
> Maybe that's an absolutely pristine feature of California law that no one has the right to challenge, but then the question remains who is that entity, at what point, and especially at the point when foreclosure is under way?

The issue at this stage of the case is not whether MERS had the authority to transfer its beneficial interest in the deed and to take other actions on behalf of the lender. Rather, the issue is whether RCS could lawfully function as the beneficial interest holder by executing a Substitution of Trustee in favor of Fidelity *before* MERS actually transferred any interest in the DOT to RCS. As the Supreme Court of Massachusetts (a non-judicial foreclosure jurisdiction) stated in *U.S. Bank National Association v. Ibanez*, "Where a [party claims legal title] after a mortgage foreclosure, a judge is entitled to ask for proof that the foreclosing entity was the mortgage holder at the time of the notice of sale and foreclosure, or was one of the parties authorized to foreclose . . . ." 458 Mass. 637, 650-51, 941 N.E.2d 40, 52 (2011).

The facts alleged and presented here are distinguishable from those in *Gomes v. Countrywide Home Loans, Inc.*, a recent California Court of Appeal decision. 192 Cal. App. 4th 1149 (2011). Gomes defaulted on his loan and MERS caused its agent to send

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

Gomes a notice of default. *Id.* at 1151. The deed of trust at issue in *Gomes* contained the following language: "Borrower . . . understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ." *Id.* Gomes nevertheless filed a lawsuit against Countrywide, MERS, and ReconTrust. *Id.* at 1152. The trial court sustained a demurrer without leave to amend, and Gomes appealed. *Id.* at 1153. The Court of Appeal affirmed. *Id.* at 1150.

On appeal, Gomes asserted that two of his causes of action should have survived the demurrer. The first cause of action, for wrongful foreclosure, alleged "that MERS did not have authority to initiate the foreclosure because the current owner of the Note did not authorize MERS to proceed with the foreclosure." *Id.* at 1152. The second cause of action sought "declaratory relief on the issue of whether '[Civil Code section 2924, subdivision (a)] allows a borrower, before his or her property is sold, to bring a civil action in order to test whether the person electing to sell the property is, or is duly authorized to so by [sic], the owner of a beneficial interest in it.'" *Id.* As the Court of Appeal observed, "the second cause of action appears to serve simply as a legal argument in support of the first cause of action." *Id.*

The Court of Appeal reasoned that a cause of action to determine whether an entity is entitled to foreclose is contrary to California's statutory foreclosure scheme. "By asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive nonjudicial scheme. . . . Gomes has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated." *Id.* at 1154. The court concluded that "[b]ecause California's nonjudicial foreclosure statute is unambiguously silent on any right to bring the type of action identified by Gomes, there is no basis for the courts to create such a right." *Id.* at 1156.

Not only is *Gomes* distinguishable on its facts, the *Gomes* court actually suggested that a cause of action for wrongful foreclosure might survive if "the plaintiff's complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

identified a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party." *Id.* (emphasis in original). Here, Plaintiffs have alleged just such a specific factual basis – namely, that RCS was not yet the beneficiary under the DOT when it executed the Substitution of Trustee in favor of Fidelity.

> 2.   Plaintiffs have sufficiently alleged claims for violation of Civil Code § 2923.5 and the UCL

Defendants argue that Plaintiffs' claim for a violation of Civil Code § 2923.5 fails because the FAC "lacks any identifying allegations regarding who participated in the Notice of Default and fails to allege who issued and/or recorded the Notice." Motion to Dismiss at 14. This is not correct. The allegations setting forth Plaintiffs' cause of action for a violation of Civil Code § 2923.5 incorporate by reference all of the preceding allegations, which do allege the exact facts that Defendants claim are missing. *See, e.g.*, FAC ¶ 17 ("On or about August 9, 2010, defendant DRN, designated as 'agent for the Beneficiary by ServiceLink, its agent, through ServiceLink, as agent, through SPL Inc., as authorized agent,' recorded a Notice of Default ("NOD") on Plaintiffs' Property"). Thus, the Notice of Default itself apparently was executed and recorded by one agent (SPL) on behalf of another agent (ServiceLink) on behalf of yet *another* agent (DRN) on behalf of some unidentified Beneficiary. Given the various bankruptcies, use of shell companies, purchases of servicing rights, side agreements, and other unrecorded transactions affecting Plaintiffs' loan, how could *anyone* – let alone unsophisticated, vulnerable homeowners – be expected to know exactly what entities "participated" in the Notice of Default?

Defendants also argue that this claim is deficient because the declaration accompanying the Notice of Default complied with the statute. Cal. Civ. Code § 2923.5(b) ("A notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section . . . ."). Even if the language in the declaration complied with the statute, that is not fatal to Plaintiffs' claim, however, because Plaintiffs allege that Defendants failed to contact Plaintiffs and explore options to avoid foreclosure, as Defendants were required to do by law. Cal. Civ. Code § 2923.5(a)(2) ("A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

situation and explore options for the borrower to avoid foreclosure."). In other words, Plaintiffs allege that the declaration is false, and they have the right to try to prove it. That is not the same as whether the *language* of the declaration fails to comply with the statute.

Defendants also argue, in cursory fashion, that Plaintiffs' UCL claim fails because it is not pleaded with specificity, Plaintiffs failed to allege injury in fact, and it is "baseless" for Plaintiffs to argue that "Defendants engaged in unfair competition by inducing them to accept a mortgage for which they were not qualified." Motion to Dismiss at 17. Defendants do not explain just what is lacking in Plaintiffs' UCL allegations, and even a cursory review of the FAC demonstrates that Plaintiffs have pleaded specific facts in support of this claim. Further, Plaintiffs specifically allege injury in fact, including "loss of equity in their home, costs and expenses related to protecting themselves, . . . fees and costs, including, without limitation, attorneys' fees and costs." FAC ¶ 52. Finally, whether Plaintiffs' allegations are "baseless" is not properly before the Court on a motion to dismiss.[7]

> 3.  <u>A tender of the amount owing under the loan is not necessary under the circumstances here</u>

Defendants argue that Plaintiffs cannot maintain *any* cause of action based on irregularities in the foreclosure process because Plaintiffs failed to make a good faith tender of the amount owing under the delinquent loan. "Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and

---

[7] One need be only an informed citizen to know that on a widespread basis and throughout the country certain unscrupulous lenders and mortgage brokers *did* induce unwary individuals to take out loans to purchase homes without requiring evidence of employment, income, tax returns, or other means to pay back the loan. The AHMC business model described by the bankruptcy court and discussed above is premised on the notion that profits would be produced merely by the generation and subsequent sales – plural – of mortgages, with little, if any, regard to whether the borrowers could or would pay them back. The bizarre series of transactions demonstrated by Exhibits A and B hereto certainly reinforce that characterization.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | | Date | June 24, 2011 |
|---|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | | |

viable tender of payment of the secured debt." *Montoya v. Countrywide Bank*, 2009 WL 1813973, *11 (N.D. Cal. June 25, 2009) (citations omitted).

Defendants present this "tender" argument as though it were absolute and without exception. Such a rule, if it existed, would in many instances eliminate any possibility of challenging wrongful foreclosures. Most homeowners, even those who are not in default, do not have ready access to the funds necessary to pay off the balance of their mortgages. Thus, if a home is about to be taken away through error or malfeasance, a homeowner would be unable to hold onto his most precious possession. This would be a grossly inequitable result and would permit entities to foreclose on properties with impunity.

In fact, contrary to Defendants' arguments, the tender rule is not absolute and "'[a] tender may not be required where it would be inequitable to do so.'" *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997) (quoting 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust & Mortgages, ¶ 9:154) (affirming trial court's grant of relief to plaintiff on rescission claim although plaintiff failed to tender). In addition, Plaintiffs have alleged that Defendants failed to contact Plaintiffs and explore options to avoid foreclosure, as Defendants were required to do by law. Cal. Civ. Code § 2923.5(a)(2) ("A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."). Tender is not required where a Plaintiff alleges a violation of section 2923.5 because "the whole point of section 2923.5 is to create a new, even if limited right, to be contacted about the possibility of *alternatives* to full payment of arrearages. It would be contradictory to thwart the very operation of the statute if enforcement were predicated on full tender." *Mabry v. Super. Ct.*, 185 Cal. App. 4th 208, 225-26 (2010).

Based on the foregoing analysis, the Court DENIES the Motion to Dismiss.

**PRELIMINARY INJUNCTION**

The June 6, 2011 hearing primarily dealt with the motion to dismiss, which the Court has hereby denied. The moving Defendants' counsel, who has acted responsibly throughout, did press at the hearing to have the preliminary injunction lifted. The Court hereby reiterates its decision to extend the injunction, albeit conditioning the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**AMENDED CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1658 AHM (CWx) | Date | June 24, 2011 |
|---|---|---|---|
| Title | ANGELA SACCHI, et al. vs. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. , et al. | | |

extension upon Plaintiff posting a $7,500.00 bond.  (The bond must be posted by July 5, 2011.)

\* \* \*

Plaintiffs allege in the FAC that their "primary intention is and at all time [sic] has been to keep the Property as their family residence. . . .  Plaintiffs' income has improved and they are ready and willing and able to make payments under a fair and reasonable permanent modification reached by the parties in a judicially supervised settlement conference."  FAC ¶¶ 39-40.  Defendants somehow construe this allegation as an admission by Plaintiffs that "they brought this lawsuit to strong-arm a modification of their loan. . . .  Filing a lawsuit to obtain an upper hand in business negotiations is blatantly improper.  It is classified as an abuse of process."  Motion to Dismiss at 2.  Plaintiffs' desire to stay in their home and their assertions that they are capable of making loan payments moving forward are in no way improper and certainly do not amount to an abuse of process.  Accordingly, the Court hereby ORDERS the parties to attend a settlement conference with the magistrate judge assigned to this case to discuss a loan modification and other avenues of settlement.

Initials of Preparer

# EXHIBIT  A

**Loan Purchase Agreement 11/21/06**

Calyon New York Branch ("Calyon") enters into purchase agreement with American Brokers Conduit ("ABC") and American Home Mortgage Corp. ("AHMC") to buy 5,700 loans, including yet to be funded loans.



**Sacchi Loan Recorded 7/25/07**

**Lender:** ABC (Subsidiary of AHMC)

**Owner of Loan:** Calyon (Pre-Sold)

**Servicer:** American Home Mortgage Servicing, Inc. ("AHMSI")

**Beneficiary:** MERS

**Trustee:** LandAmerica

**AHMC files for BK 8/6/07**

**Owner of Loan:** Calyon

**New Servicer:** AH Mortgage Acquisition Co. (Later changes name to American Home Mortgage Servicing, Inc., same name as original servicer)

**Beneficiary:** MERS

**Trustee:** LandAmerica

**Loan Servicing Rights Transferred 1/29/10**

**Owner of Loan:** Calyon

**New Servicer:** Residential Credit Solutions ("RCS")

**Beneficiary:** MERS

**Trustee:** LandAmerica

**Notice of Sale recorded 1/6/2011**

**Owner of Loan:** Calyon

**Servicer:** RCS

**Beneficiary:** RCS

**New Trustee:** Power Default Services ("PDS")

*PDS is referenced for first time as "duly appointed Trustee" and signs NTS.

*"Juan Enriquez" signs for Fidelity as "Agent for mortgage loan servicer" on 1/3/2010.

**5/2010**

Payment Missed

**NOD Recorded 8/9/2010**

**Owner of Loan:** Caylon

**Servicer:** RCS

**Beneficiary:** MERS or AHMSI

**Trustee:** LandAmerica or DRN (division of Fidelity)

**Signer:** Default Resolution Network ("DRN")

*NOD instructs Sacchi's to contact AHMSI, to make payment.

*Signature on NOD very suspect.

*DRN is division of Fidelity National Title Co. ("Fidelity") Fidelity not substituted in until, at earliest, 11/17/10.

**Assignment of DOT is recorded 1/6/2011 (signed 12/22/10)**

**Owner of Loan:** Calyon

**Servicer:** RCS

**New Beneficiary:** RCS (MERS out)

**Trustee:** Fidelity

*MERS signs as outgoing beneficiary.

**Substitution of Trustee ("SOT") 11/17/10 (Recorded 01/06/11)**

**Owner of Loan:** Caylon

**Servicer:** RCS

**Beneficiary:** MERS or AHMSI

**New Trustee:** Fidelity

*SOT refers to "undersigned beneficiary" - RCS signed as "beneficiary".

*Affidavit of mailing signed by Juan Enriquez on 1/3/2010.

1   Vito Torchia, Jr. (SBN 244687)
    torchiav@brookstone-law.com
2   Deron Colby (SBN 196686)
    dcolby@brookstone-law.com
3   Aalok Sikand (SBN 248165)
    asikand@brookstone-law.com
4   Joshua Shelton (SBN 256177)
    jshelton@brookstone-law.com
5   **BROOKSTONE LAW, PC**
    4000 MacArthur Blvd., Suite 1110
6   Newport Beach, California 92660
    Telephone: (800) 946-8655
7   Facsimile: (866) 257-6172

8   Attorneys for Plaintiffs ANGELA SACCHI and ROBERT SACCHI

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13   ANGELA SACCHI, an individual; and      Case No.: CV 11-01658 AHM (CWx)
     ROBERT SACCHI, an individual,
14                                          *[Assigned to the Honorable*
15                                          *A. Howard Matz, Courtroom 14]*
              Plaintiffs,
16
        vs.
17                                          **PLAINTIFFS ANGELA SACCHI**
     MORTGAGE ELECTRONIC              **AND ROBERT SACCHI'S**
18   REGISTRATION SYSTEMS, INC., a    **CHRONOLOGY OF EVENTS IN**
                                      **FURTHERANCE OF PLAINTIFFS'**
19   Delaware corporation, as nominee for  **DIAGRAM OF EVENTS**
     AMERICAN HOME MORTGAGE          **PURSUANT TO COURT ORDER**
20   CORPORATION d/b/a AMERICAN
21   BROKERS CONDUIT; AMERICAN       [Filed concurrently with:
     HOME MORTGAGE SERVICING,          • Plaintiffs Supplemental Salazar
22   INC., a Delaware corporation;           Brief; and
     AMERICAN HOME MORTGAGE            • Plaintiffs Loan History Diagram.]
23   CORPORATION d/b/a AMERICAN
24   BROKERS CONDUIT, a New York
     corporation; RESIDENTIAL CREDIT  Action Filed:  January 21, 2011
25   SOLUTIONS, INC., a Delaware      Hearing Date: June 6, 2011
26   corporation; FIDELITY NATIONAL   Courtroom: 14—Spring St. Floor
     TITLE COMPANY d/b/a DEFAULT
27   RESOLUTION NETWORK, a
28

                              - 1 -

California corporation; DEFAULT
RESOLUTION NETWORK, an
unknown entity; POWER DEFAULT
SERVICES, Inc., a Texas Corporation;
LANDAMERICA
COMMONWEALTH, an entity of
unknown form; and DOES 1 to 1000,
inclusive,

                    Defendants.

       The following chronology is prepared with reference to Defendants' Loan History Diagram, Plaintiffs' Loan History Diagram and Defendants' Chronology and Supporting Documentation in Furtherance of Defendants' Diagram of Events Pursuant to Court Order:

1. **November 21, 2006:** Calyon New York Branch ("Calyon") signs a "Repurchase Agreement" with Plaintiffs original lender, American Brokers Conduit ("ABC"), to purchase loans from ABC. ABC is a subsidiary of American Home Mortgage Corp. ("AHMC"). [**Exhibit "2"** to Defendants' Chronology.]

2. **July 16, 2007:** Plaintiffs enter into a loan transaction with ABC. There are no disclosures in the loan documents that ABC had "presold" Plaintiffs loan to Calyon. In essence, at the time the loan was funded the loan was already sold to Calyon.

3. **July 25, 2007:** The original Deed of Trust ("DOT") is recorded. [**Exhibit "1"** to Defendants' Chronology.] The "players" at this point are (future changes to the "players" will be noted in bold):

          Lender: ABC

          Owner of the Loan: Calyon

Servicer: American Home Mortgage Servicing, Inc. ("AHMSI")

Beneficiary: MERS

Trustee: LandAmerica

4. **August 6, 2007**: AHMC, parent of original lender ABC, files for Chapter 11 bankruptcy. [**Exhibit "5"** to Defendants' Chronology.] The loan stays with Calyon. The servicing rights on the loan are sold to AH Mortgage Acquisition Co., Inc. ("AHMAC"). The players are now:

Owner of the Loan: Calyon

**Servicer: AHMC**

Beneficiary: MERS

Trustee: LandAmerica

5. **Date Unknown**: AHMAC changes its name to American Home Mortgage Servicing, Inc. ("AHMSI"), the same name as the original servicer. [**Exhibit "6"** to Defendants' Chronology.]

6. **April 11, 2008**: AHMSI and Calyon enter into a "Servicer Side Letter" wherein Calyon confirms AHMSI is new servicer. [**Exhibit "8"** to Defendants' Chronology.]

7. **July 21, 2009**: A "formal Servicing Agreement" is executed between Calyon and AHMSI where it apparently becomes "official" that AHMSI is now servicing Plaintiffs' loan. [**Exhibit "9"** to Defendants' Chronology.] The players are now:

Owner of the Loan: Calyon

**Servicer: AHMSI (per name change)**

- 3 -

Beneficiary: MERS

Trustee: LandAmerica

8. **January 1, 2010**: Pursuant to the formal Servicing Agreement, Calyon now transfers the servicing rights to Plaintiffs' loan to Residential Credit Solutions, Inc. ("RCS"). The players are now:

   Owner of the Loan: Calyon

   **Servicer: RCS**

   Beneficiary: MERS

   Trustee: LandAmerica

9. **May of 2010**: Plaintiffs begin missing payments on their mortgage. [**Exhibit "13"** to Defendants' Chronology.]

10. **August 9, 2010**: Default Resolution Network ("DRN"), as "Agent for Beneficiary" records a Notice of Default ("NOD") on the property. [**Exhibit "14"** to Defendants' Chronology.] Plaintiffs are informed and therefore believe that DRN is a division of Fidelity National Title Company ("Fidelity"). California Civil Code §2924c(b)(1) requires that the NOD include a section that reads:

```
To find out the amount you must pay, or to arrange for
payment to stop the foreclosure, or if your property is
in foreclosure for any other reason, contact:

    _____
         (Name of beneficiary or mortgagee)
    _____
                 (Mailing address)
    _____
                   (Telephone)
```

- 4 -

**PLAINTIFFS' CHRONOLOGY OF EVENTS**

Under the section designated for "beneficiary or mortgagee", AHMSI is identified. The players are now:

> Owner of the Loan: Calyon
> Servicer: RCS
> **Beneficiary: MERS or AHMSI\***
> **"Agent for Beneficiary": DRN**
> **Trustee: LandAmerica or DRN (division of Fidelity)**

*Either MERS, a "nominal beneficiary", or AHMSI has begun the foreclosure process in the name of Calyon, the owner of the loan who has not, to date, been disclosed in any publicly filed or recorded document.

11. **October 1, 2010**: Although somewhat confusing, Defendants' chart says this is the date that the servicing rights were transferred to RCS by virtue of an "Amended and Restated Asset Schedule" to the RCS Servicing Agreement. [1] [**Exhibit "11"** to Defendants' Chronology.] This is also the date that the transfer of servicing rights to RCS is reflected in a "Notice of Termination" letter from Calyon (now known as "Credit Agricole") to AHMSI. [**Exhibit "12"** to Defendants' Chronology.] The players are now:

> Owner of the Loan: Calyon
> Servicer: RCS
> Beneficiary: MERS or AHMSI
> Trustee: LandAmerica or DRN or Fidelity

---

[1] Despite the fact that the agreement transferring those rights was signed over 10 months prior.

**PLAINTIFFS' CHRONOLOGY OF EVENTS**

12. **November 17, 2010**: RCS allegedly signs a Substitution of Trustee ("SOT")
substituting in Fidelity as Trustee. [**Exhibit "15"** to Defendants'
Chronology.] The SOT is not recorded until January 6, 2011. Attached to the
SOT is the statutorily required "Affidavit of Mailing" wherein Juan
Enriquez swears that on January 3, 2010 (11 months before the signing), he
mailed the SOT to Plaintiffs. The players are now:

> Owner of the Loan: Calyon
> Servicer: RCS
> Beneficiary: MERS or AHMSI
> **Trustee: Fidelity**

13. **December 22, 2010**: MERS signs an Assignment of Deed of Trust ("DOT
Assignment") whereby MERS assigns all right, title and interest in the DOT
to RCS. [**Exhibit "17"** to Defendants' Chronology.] The DOT Assignment
is recorded on January 6, 2011. The players are now:

> Owner of the Loan: Calyon
> Servicer: RCS
> **Beneficiary: RCS**
> Trustee: Fidelity

14. **January 6, 2011**: Three separate documents are recorded:

    (i)    SOT that was executed in November of 2010.

    (ii)   Assignment of DOT that was executed in December of 2010.

- 6 -

(iii)     Notice of Trustee's Sale ("NTS") that was executed on January 3, 20**10**. The NTS is signed by Power Default Services ("PDS") as "Trustee". A party that appears for the first time. [**Exhibit "18"** to Defendants' Chronology.]

The players on this date are:

> <u>Owner of the Loan</u>: Calyon
>
> <u>Servicer</u>: RCS
>
> <u>Beneficiary</u>: RCS
>
> **<u>Trustee</u>: Power Default Services**

As detailed in Plaintiffs' *Salazar* Brief (the "Brief"), there were parties fazing in and out of the picture, a dizzying merry-go-round of servicers, beneficiaries and trustees.  As the Brief makes clear, parties have performed acts in furtherance of foreclosing on Plaintiffs before they had the legal right to take such action.

Dated:  May 23, 2011          Respectfully submitted,
                                  **BROOKSTONE LAW, PC**

                              By:    /s/ - Deron Colby
                                      Deron Colby
                                      Attorneys for Plaintiffs,
                                      ANGELA AND ROBERT SACCHI

**PLAINTIFFS' CHRONOLOGY OF EVENTS**

# EXHIBIT B

## SACCHI LOAN HISTORY DIAGRAM

**Note and DOT executed 07/16/07**
*DOT Recorded 7/25/07

Originating Lender:
American Broker's Conduit ("ABC")
*ABC is a subsidiary of American Home Mortgage Corp. ("AHMC")

Nominee Beneficiary of DOT: MERS



*RCS holds the original Sacchi Note and DOT which will be made available for the Court's review

Ownership Transfer (2007)

Calyon New York Branch ("Calyon"; as Administrative Agent) purchases 5,700 loans from AHMC/ABC, including the Sacchi Loan, in connection with a "Repurchase Agreement" executed between AHMC and Calyon on 11/21/2006

*Loans are serviced by American Home Mortgage Servicing, Inc., a **Maryland** corporation (division of AHMC)

*MERS remains Nominee Beneficiary of DOT at all times

Bankruptcy Action (2007 – 2008*)

*AHMC Bankruptcy Case still ongoing

*AHMC files Ch. 11 Bankruptcy Petition on 08/06/2007 (as well as other AHMC divisions and subsidiaries)

*Loans remain an asset of Calyon, but BK court deems servicing rights severable from Repurchase Agreement and thus an asset of AHMC

*AH Mortgage Acquisition Co., Inc. purchases loan servicing rights from AHMC's bankruptcy estate; Purchase Agreement dated 09/27/2007; BK Order approving purchase dated 10/30/2007; Acquisition finalized on 04/11/2008

*MERS remains Nominee Beneficiary of DOT at all times

*Notice of Trustee's Sale ("NOTS") executed by FNTC on 01/03/2010 and recorded on 01/06/2010

[See Exhibit "16": Declaration of Juan Enriquez regarding date of NOTS execution claim]

Loan Servicing (2008 – 2009)

*As part of the servicing purchase, AH Mortgage Acquisition Co., Inc. changes its name to American Home Mortgage Servicing, Inc., a **Delaware** corporation (Defendant "AHMSI")

*Calyon confirms AHMSI as new servicer by way of "Servicer Side Letter" dated 04/11/2008

*Formal Servicing Agreement executed on 07/21/2009 ("AHMSI Servicing Agreement"); references Loan No. 0031853962 ("Sacchi Loan") as a serviced loan

*MERS remains Nominee Beneficiary of DOT at all times

*Assignment of DOT executed by MERS on 12/22/2010

*Recorded on 01/06/2011

*Substitution of Trustee ("SOT") executed by RCS on 11/17/2010 subbing in FNTC as Trustee; SOT Recorded on 01/06/2011

[See Exhibit "16": Declaration of Juan Enriquez regarding date of Affidavit of Mailing claim]

*Under the RCS Servicing Agreement, RCS has full authority to initiate and effectuate foreclosure, which includes substituting trustees

Loan Servicing Transfer (2010)

*Pursuant to the terms of the AHMSI Servicing Agreement, Calyon, as Administrative Agent, transfers servicing under loans to Defendant RCS by way of a Servicing Agreement dated 01/29/2010 ("RCS Servicing Agreement")

*Effective as of 10/01/2010, servicing of the Sacchi Loan is transferred to RCS by virtue of an "Amended and Restated Asset Schedule" to the RCS Servicing Agreement

*10/01/2010 servicing transfer to RCS is acknowledged in "Notice of Termination" letter from Caylon (then known as Credit Agricole) to AHMSI

*<u>Sections 2.02, 3.01(a), 3.02(b) and 3.17 of the RCS Servicing Agreement require that RCS be designated as beneficial holder of the DOT on the MERS system and authorize RCS to take title to the DOT and grant full power and authority to effectuate a pending or completed foreclosure</u>



*Sacchi's cease making payments and are in default as early as 05/2010



*Notice of Default ("NOD") executed by DRN, **as Agent for Beneficiary**, on 08/09/2010 and recorded on 08/09/2010

1

WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 167280
rfinlay@wrightlegal.net
Todd E. Chvat, Esq., SBN 238282
tchvat@wrightlegal.net
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel: (949) 477-5050; Fax: (949) 477-9200

Attorneys for Defendants AMERICAN HOME MORTGAGE SERVICING, INC., POWER DEFAULT SERVICES, INC., RESIDENTIAL CREDIT SOLUTIONS, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA SACCHI, an individual and ROBERT SACCHI, an individual; | ) Case No.: 11-cv-01658 AHM (CWx) ) |
| Plaintiffs, | ) **DEFENDANTS' CHRONOLOGY** ) **AND SUPPORTING** ) **DOCUMENTATION IN** ) **FURTHERANCE OF DIAGRAM OF** |
| vs. | ) **EVENTS PURSUANT TO COURT** ) **ORDER** |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation, as nominee for AMERICAN HOME MORTGAGE CORPORATION d/b/a AMERICAN BROKERS CONDUIT; AMERICAN HOME MORTGAGE SERVICING, INC., a Delaware corporation; AMERICAN HOME MORTGAGE CORPORATION d/b/a AMERICAN BROKERS CONDUIT, a New York corporation; RESIDENTIAL CREDIT SOLUTIONS, INC., a Delaware | ) ) ) ) ) ) Hearing Date: June 6, 2011 ) Time: 10:00 a.m. ) Courtroom: 14 - Spring St. Floor ) ) ) ) ) ) ) ) ) |

-1-

CHRONOLOGY AND SUPPORTING DOCUMENTATION

corporation; FIDELITY NATIONAL )
TITLE COMPANY d/b/a DEFAULT )
RESOLUTION NETWORK, a )
California corporation; DEFAULT )
RESOLUTION NETWORK, an )
unknown entity; POWER DEFAULT )
SERVICES, INC., a Texas )
corporation; and DOES 1 to 100, )
inclusive, )
)
)
_____ )
                    Defendants.  )

This chronology has been prepared by Defendants AMERICAN HOME MORTGAGE SERVICING, INC., POWER DEFAULT SERVICES, INC., RESIDENTIAL CREDIT SOLUTIONS, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("Defendants") pursuant to the Court's Order and is intended to track the Loan History Diagram filed concurrently herewith:

1. The Promissory Note ("Note") and Deed of Trust ("DOT") were executed on July 16, 2007 and the DOT was recorded on July 25, 2007. [**Exhibit "1"**, DOT].

2. The originating Lender under the Note and DOT is American Broker's Conduit ("ABC"), a subsidiary of American Home Mortgage Corp. ("AHMC"). [**Exhibit "1"**].

3. The nominee Beneficiary of the DOT is Mortgage Electronic Registration Systems, Inc. ("MERS"). [**Exhibit "1"**].

4. Pursuant to a "Repurchase Agreement" between AHMC and **Calyon New York Branch**, as Administrative Agent ("Calyon"), dated November 21, 2006, all subsequent AHMC loans, including the Sacchi's, were purchased by Calyon (approximately 5,700 mortgage loans with an original unpaid principal balance of just under $1.2 billion). MERS' status as nominee Beneficiary under the DOT remains unaltered. [**Exhibit "2"**, Repurchase Agreement, generally, and **Exhibit "3"**, Appellate Court Opinion, pg. 4].

5. "The purpose of the [Repurchase Agreement] was to provide

-2-

1  [AHMC] with funds for the origination of mortgage loans. The funds to originate
2  the mortgage loans were transferred by the Purchasers [i.e., Calyon as
3  Administrative Agent] to [AHMC]. Immediately upon origination, the mortgage
4  loans were transferred to [Calyon]." [**Exhibit "4"**, Bankruptcy Court Opinion, pg.
5  5]. <u>Calyon thus owned the Sacchi's loan that was originated on July 16, 2007.</u>

6      6.    Under the Repurchase Agreement, AHMC would then "attempt to
7  arrange for [the loans] final disposition, either by sale to a private investor on a
8  whole loan basis or to a securitization trust. Upon final disposition of the
9  mortgage loans, the loans [would be] repurchased by [AHMC] in exchange for a
10 payment…of the original purchase price paid to [AHMC] plus the "Price
11 Differential." [**Exhibit "4"**, pg. 5-6].

12     7.    However, on August 06, 2007 (approximately four (4) weeks after
13 origination and transfer), AHMC filed a voluntary petition under Chapter 11,
14 along with all other AHMC divisions and subsidiaries. [**Exhibit "5"**, Voluntary
15 Petition and Order Authorizing Joint Administration]. <u>AMHC thus defaulted</u>
16 <u>under the Repurchase Agreement and the Sacchi loan remained an asset of</u>
17 <u>Calyon.</u>

18     8.    While the mortgage loans themselves remain an asset of Calyon, the
19 Delaware Bankruptcy Court deems the loan servicing rights severable from the
20 Repurchase Agreement and thus an asset of AHMC's bankruptcy estate. [**Exhibit**
21 **"4"**, Bankruptcy Court Opinion, pg. 29].

22     9.    In connection with the court's order, the loan servicing rights are
23 deemed an asset of AHMC's bankruptcy estate and were purchased by AH
24 Mortgage Acquisition Co., Inc., a Delaware corporation [**Exhibit "4"**, pg. 29;
25 **Exhibit "6"**, Loan Servicing Asset Purchase Agreement; **Exhibit "7"**,
26 Bankruptcy Court Order Approving the Sale of the Debtor's Mortgage Servicing
27 Business].

28     10.   As part of the servicing purchase, AH Mortgage Acquisition Co., Inc.

-3-

1   changed its name to American Home Mortgage Servicing, Inc., a Delaware

2   corporation, i.e., Defendant "AHMSI". [**Exhibit "6"**, Section 6.10(b) "Name

3   Changes"].

4       11.   Calyon confirms AHMSI (still referenced at that time as AH

5   Mortgage Acquisition Co., Inc.) as new servicer by way of the "Servicer Side

6   Letter" dated April 11, 2008. [**Exhibit "8"**, Servicer Side Letter].

7       12.   A formal Servicing Agreement was executed on July 21, 2009

8   between Calyon and AHMSI (the "AHMSI Servicing Agreement"). Exhibit A to

9   the Agreement references the Sacchi's loan (identified as Loan No. 0031858962)

10   under "Serviced Mortgage Loans". [**Exhibit "9"**, AHMSI Servicing Agreement,

11   generally and loan reference on **Exhibit "9"**, Exhibit A, pg. 81].

12       13.   Thereafter, in accordance with the terms of the AHMSI Servicing

13   Agreement, Calyon transferred servicing rights for certain loans to Defendant

14   Residential Credit Solutions, Inc. ("RCS"). On January 29, 2010, a Servicing

15   Agreement was executed between Calyon and RCS (the "RCS Servicing

16   Agreement"). [**Exhibit "10"**, RCS Servicing Agreement].

17       14.   Effective as of October 1, 2010, servicing of the Sacchi loan in

18   particular is transferred to RCS under an "Amended and Restated Asset Schedule"

19   to the RCS Servicing Agreement. The Sacchi loan and property address are

20   referenced in the Replacement Asset Schedule. [**Exhibit "11"**, Amended and

21   Restated Asset Schedule].

22       15.   Further, this servicing transfer to RCS was acknowledged in a

23   "Notice of Termination" letter from Calyon (then known as Credit Agricole

24   Commercial and Investment Bank) to AHMSI. [**Exhibit "12"**, Notice of

25   Termination].

26       16.   Sections 2.02, 3.01(a), 3.02(b) and 3.17 of the RCS Servicing

27   Agreement require that RCS be designated as beneficial interest holder of the

28   DOT on the MERS system and further authorize RCS to take title and interest to

CHRONOLOGY AND SUPPORTING DOCUMENTATION

the DOT in its name and grant full power and authority to effectuate foreclosure and complete its duties thereunder. [**Exhibit "10"**, RCS Servicing Agreement, Sections 2.02, 3.01(a), 3.02(b) and 3.17].

17.  Sacchi's ceased making payments and were thus in default as early as May 2010. [**Exhibit "13"**, Customer Account Activity Statement].

18.  A Notice of Default ("NOD") was executed and recorded on August 9, 2010 by "Default Resolution Network **Agent for the Beneficiary…**" [**Exhibit "14"**, NOD]. The NOD is valid pursuant to Civil Code § 2924(a)(1) and 2924b(b)(4).

19.  A Substitution of Trustee ("SOT") was executed and notarized on November 17, 2010 by RCS substituting Fidelity National Title Company ("FNTC") as Trustee. The SOT was recorded on January 6, 2011. [**Exhibit "15"**, SOT].

20.  As detailed above, RCS' interest in the DOT as the Loan's servicer was established as of October 1, 2010. Pursuant to the RCS Servicing Agreement itself, RCS had the explicit authority from Calyon to take title in its own name, if need be, and is vested with full authority and power to perform its duties, which include initiating and effectuating foreclosure and substituting the DOT trustee. [*See* No.'s 13-16 above].

21.  Furthermore, section 3.02(b) specifically states "[i]n the event that any payment due under any Mortgage Loan remains delinquent for a period of 90 days or more,…the Servicer [RCS]…shall commence foreclosure proceedings on such Mortgage Loan". [**Exhibit "10"**, RCS Servicing Agreement, Section 3.02(b), pg. 25].

22.  Accordingly, RCS had full authority on November 17, 2010 to execute and record the SOT and the SOT is valid.

23.  Plaintiffs also contend that the SOT is invalid because the affidavit of mailing on page 3 indicates a signature date of "01/03/2010". Specifically, the

-5-

FAC alleges that:

> On or about January 3, 2010, a "Juan Enriquez" signed a document entitled "Fidelity National Title Company—Affidavit of Mailing," on behalf of defendant FIDELITY…In short, at the time defendant FIDELITY's agent, Mr. Enriquez, signed the statutorily required affidavit attesting that the mailing of the Substitution of Trustee occurred according to the law, the document that was allegedly mailed had not even been signed and would not be signed and recorded for almost one year. As such, the Substitution of Trustee substituting defendant FIDELITY in as trustee is fatally defective and did not and could not have conferred the authority on FIDELITY to foreclose on the Property.[1]

However, in their original complaint, paragraph 13, Plaintiffs' state "Plaintiff is informed and believes that although the Notice of Sale states that it was signed on January 10, 2010 [sic], the signor actually mean [sic] January 10, 2011."[2]

More importantly, the Declaration of Mr. Enriquez clearly establishes that his reference to 2010 on page 3 of the SOT was inadvertent. **"The actual date when I executed the SOT "Affidavit of Mailing" was on January 3, 2011, not January 3, 2010. As is typically the case upon any new year, I inadvertently referenced the prior year of 2010 by mistake."** [**Exhibit "16"**, Declaration of Juan Enriquez, ¶¶ 1-5 (emphasis added)].

24.     An Assignment of Deed of Trust was executed and notarized by MERS, the nominee Beneficiary, on December 22, 2010 and recorded on January 6, 2011. [**Exhibit "17"**, DOT Assignment].

25.     A Notice of Trustee's Sale ("NOTS") was executed by FNTC on January 3, 2011 and recorded on January 6, 2011. [**Exhibit "18"**, NOTS].

---

[1] Plaintiffs' First Amended Complaint, ¶13.
[2] See Plaintiffs' Complaint attached to Notice of Removal, ¶13.

-6-

1    26.    Similar to the SOT, Plaintiffs contend that the NOTS is invalid
2 because it indicates a signature date of "01/03/2010". Specifically, the FAC
3 alleges that:

5        Also on or about January 3, 2010, Mr. Enriquez...signed a Notice
         of Trustee's Sale ("NTS") wherein the sale of the Property was set
6        for January 26, 2011. The NTS was recorded on January 6, 2011,
7        over one year *after* Mr. Enriquez signed the NTS. The NTS was
         signed prior to any default by Plaintiffs, prior to any service or
8        recording of a Notice of Default ("NOD") and prior to the ripening
9        of any of the defendants' right to begin foreclosure proceedings
         against Plaintiffs. As such, the NTS was a legal nullity,
10       extinguishing defendants' rights to foreclose on Plaintiffs.[3]

11       However, in their original complaint, paragraph 13, Plaintiffs' state
12 "Plaintiff is informed and believes that although the Notice of Sale states
13 that it was signed on January 10, 2010 [sic], the signor actually mean [sic]
14 January 10, 2011."

15       More importantly, the Declaration of Mr. Enriquez clearly
16 establishes that his reference to 2010 on page 3 of the NOTS was
17 inadvertent. **"On page 3 of the NOTS, the indicated date of January 3,**
18 **2010 is again erroneous.  The actual date when I executed the NOTS**
19 **was on January 3, 2011, not January 3, 2010.  Again, as is typically the**
20 **case upon any new year, I inadvertently referenced the prior year of**
21 **2010 by mistake." [Exhibit "16", Declaration of Juan Enriquez, ¶¶ 1-5**
22 (emphasis added)].

23       27.    Accordingly, the NOTS is valid.

24       28.    Finally, **RCS possesses the Original Note and DOT which**
25 **are now currently in counsel's possession upon request**. The Original
26 Note and DOT shall be made available for the Court's review at the OSC
27 hearing on June 6, 2011. RCS' possession of these original loan documents

28
_____
[3] Plaintiffs' First Amended Complaint, §14.
                              -7-
_____
CHRONOLOGY AND SUPPORTING DOCUMENTATION

1  unequivocally establishes that Defendants are, and at all times
2  pertinent were, authorized to initiate and effectuate the underlying
3  foreclosure proceeding. [**Exhibit "19"**, Declaration of Todd E. Chvat, ¶¶
4  3-5].

5                                          Respectfully submitted,

6                                          WRIGHT, FINLAY & ZAK, LLP

7
   Dated:  May 23, 2011                    By:/*Todd E. Chvat*/
8                                          T. Robert Finlay, Esq.,
9                                          Todd E. Chvat, Esq.,
                                           Attorneys for Defendants
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHRONOLOGY AND SUPPORTING DOCUMENTATION